IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

MICHAEL A. N.,  )
        PLAINTIFF,  )
vs.  ) CASE NO. 18-CV-600-FHM
Andrew M. Saul, Commissioner of Social Security,  )
        Defendant.  )

## OPINION AND ORDER

Plaintiff, Michael A. N., seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. See *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a

---

[1] Plaintiff Michael A. N.'s application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) John W. Belcher was held October 3, 2017. By decision dated November 1, 2017, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on September 24, 2018. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.*, 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495 (10th Cir. 1992).

Background

Plaintiff was 42 years old on the alleged date of onset of disability and 47 years old on the date of the denial decision. He received his high school education and has no past work experience. Plaintiff claims to have been unable to work since March 1, 2013 due to seizures, high blood pressure, arthritis, knee problems, nerve problems, shoulder problems, hip problems, back problems, persistent pain from past broken rib, and hearing loss. [R. 16, 252].

The ALJ's Decision

The ALJ determined that the Plaintiff has severe impairments relating to epilepsy, left shoulder impairment, lumbago, osteoarthritis of the right hand, affective disorder, and anxiety disorder. [R. 18]. The ALJ also determined that Plaintiff's hypertension, rib fracture, hearing loss, and impairment of left foot were non-severe. Non-medically determinable impairments included bilateral knee impairment, right shoulder impairment, and bilateral hip impairment. [R. 19]. The ALJ found that the Plaintiff has the residual

2

functional capacity (RFC) to perform medium exertional work. Pushing/pulling limitations are consistent with lifting and carrying limitations. Plaintiff is able to stand/walk 6 hours in an 8-hour workday; and sit 6-8 hours in an 8-hour workday. Plaintiff can occasionally reach above the head with the left upper extremity and handle with the left hand. He should avoid all hazardous of (sic) fast machinery, unprotected heights, driving, and pools of water. He is limited to simple tasks; superficial contact with co-workers or supervisors; and no contact with the public. [R. 21].

The ALJ determined that Plaintiff has no past relevant work. However, based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that Plaintiff could perform. [R. 24-25]. Accordingly, the ALJ found Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. See *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff's Allegations

Plaintiff asserts that the: 1) ALJ's residual functional capacity determination is not based on substantial evidence; and 2) ALJ erred in not resolving the conflict between the Dictionary of Occupational Titles and the vocational expert testimony. [Dkt. 14, p. 3].

## Analysis

Conflict between Dictionary of Occupational Titles
and Vocational Expert Testimony

Plaintiff argues that reversal of the ALJ's decision and remand is required for the ALJ to resolve the conflict between the vocational expert's testimony and the Dictionary

of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO). [Dkt. 14, p. 3, 7]. The ALJ found Plaintiff had no past relevant work. [R. 24]. In response to hypothetical questioning by the ALJ, the vocational expert testified that representative jobs available within the economy included bakery worker (light) DOT #524.687-022; sign carrier (light) DOT #299.687.014; and surveillance monitor (sedentary) DOT #379.367-010. [R. 25].

Plaintiff contends a conflict exists between the vocational expert whose testimony was that the job of bakery worker would not expose Plaintiff to hazardous or fast machinery when the SCO describes that job as requiring exposure to bodily injury from moving mechanical parts of equipment, tools, or machinery. Further, Plaintiff's RFC assessment limited him to no pubic contact, yet the DOT describes the job of sign carrier as wearing a board and walking in public for advertising purposes. [Dkt. 14, p. 7]. As to the job of surveillance monitor, it was unclear from the decision whether the ALJ found that the numbers of each of the jobs standing alone constituted a significant number within the meaning of 42 U.S.C. § 423(d)(2)(a). [Dkt. 17, p. 4].

The Tenth Circuit has stated that, when there is a conflict between the DOT and the testimony of a vocational expert, the ALJ "must investigate and elicit a reasonable explanation for any conflict . . . before the ALJ may rely on the expert's testimony." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); see also SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Failure to resolve the conflict is reversible error, unless the error is harmless. *Poppa v. Astrue*, 569 F.3d 1167, 1173-74 (10th Cir. 2009); see also Krueger *v. Astrue*, 337 F. App'x 758, 761-62 (10th Cir. 2009). There is an apparent

conflict here between the vocational expert testimony and the DOT and SCO's description of bakery worker and sign carrier.  Although the ALJ did ask the vocational expert to explain any difference between her testimony and the information in the DOT prior to posing the hypothetical question, [R. 43], the vocational expert failed to identify the conflicts.   Plaintiff would be unable to perform the job of bakery worker because the ALJ's RFC assessment includes a limitation to avoid all hazardous or fast-moving machinery. [R. 21].  Further, there is a limitation of no public contact which would exclude sign carrier.  [R. 21].  Thus, the ALJ could not rely on the vocational expert's testimony as to the bakery worker and sign carrier.  See *Haddock*, 196 F.3d at 1092.

A third job, surveillance monitor, DOT #379.367-010, was identified by the vocational expert and accepted by the ALJ.  The Commissioner argues that the one remaining job exists in sufficient numbers in the national economy so as to satisfy the requirements at step five.  [R. 25].  However, the court finds that the case must be reversed because it is for the Commissioner, not the court, to determine in the first instance whether 83,000 jobs in the national economy constitutes a significant enough number of jobs to support a finding of not disabled.  *See Norris v. Barnhart,* 197 Fed.Appx. 771, 777 (10th Cir. 2006)(remand appropriate where number of jobs is relatively few and it is not clear whether the ALJ found number of each job or collective number of jobs to constitute a significant number).[2]

---

[2] Where an ALJ has improperly relied on one or more, but not all, of the jobs identified by a vocational expert in a step-five determination, "the Tenth Circuit has often continued its analysis" and rejected a claimant's argument for remand if the ALJ's findings regarding the remaining occupations support the ALJ's ruling. *See Keyes-Zachary v. Colvin*, 2015 WL 65528, at *5–6 (N.D.Okla. Jan.5, 2015) (citing cases); *see, e.g., Chrismon v. Colvin*, 531 Fed. Appx 893, 899–900 (10th Cir.2013) (applying harmless-error analysis

Residual Functional Capacity

Plaintiff argues the ALJ's finding that he could perform medium work is not supported by substantial evidence.[3] Plaintiff contends that based upon the findings of Drs. Hatfield, Karathanos, and Krishnamurthi, and x-rays performed on July 5, 2017, he would not be able to stand 6 hours out of 8 hours as required by medium work. [Dkt. 14, p. 5-6].

Plaintiff points to various medical records including the November 2016 evaluation by P. Shawn Hatfield, DPM, FACFAS, [R. 445-447], who noted pain on palpation at the peroneus brevis tendon of the left foot. [R. 455]. Dr. Hatfield recommended Plaintiff wear a wider shoe and compression sleeve with gel padding. Dr. Hatfield stated Plaintiff may ultimately "require exostectomy with repair of the peroneus brevis tendon," however, he urged Plaintiff to exhaust all conservative treatment first. [R. 446].

Plaintiff also points to the May 3, 2017 consultative examination by Michael Karathanos, M.D., who noted Plaintiff had pain and swelling in his toes and exotosis in the left lateral foot. [R. 468]. Dr. Karathanos opined Plaintiff could walk without a cane

---

and holding that step-five "significant numbers" requirement was met where two of four occupations cited by the ALJ offered a total of 17,500 jobs regionally and 212,000 jobs nationally); *Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008)(finding ALJ's error in considering certain occupations harmless at step five where two of four occupations cited by the ALJ offered a total of 11,000 jobs regionally and 152,000 jobs nationally); *see also Rogers v. Astrue*, 312 Fed. Appx. 138, 141–42 (10th Cir.2009) (affirming where there was no error as to one of four occupations identified by ALJ and that occupation offered 11,000 jobs in the national economy). *But see Norris v. Barnhart*, 197 Fed Appx. 771, 776–77 (10th Cir.2006) (reversing on other grounds and stating, in connection with occupations totaling approximately 1500 jobs in the regional economy and 200,000 jobs in the national economy, that upon remand ALJ may need to consider the relevant factors to determine if jobs existed in "significant numbers").

3   Defendant's Response Brief incorrectly states "Plaintiff alleges disability due to physical disorders, and he argues specifically in his brief that the ALJ erred in finding his left foot disorder not to be "severe", in not finding medically determinable knee and hip disorders, and in assessing his physical RFC in light of these disorders." [Dkt. 16, p. 4].

for short distances, but would need cane for long distances. [R. 468]. Dr. Karathanos also completed a Medical Source Statement (Physical) opining Plaintiff could stand for 30 minutes at a time for a total of 30 to 45 minutes during an 8-hour work period. [R. 470].

In discussing Dr. Karathanos' examination, the ALJ noted Plaintiff was afebrile, alert, oriented, cooperative, and memory to be preserved. Motor examination did not demonstrate any definite neurological type of weakness in the upper extremities except for the fact that Plaintiff has a slightly decreased left hand grip. No definite weakness in the lower extremities or any rigidity, spasticity, involuntary movements, tremors, atrophy, or fasciculations. Plaintiff had mild swelling of his toes and exostosis in the left lateral foot. Coordination is preserved in the upper and lower extremities with the exception of slightly decreased coordination and rapid alternating movements of the left hand. Gait is slow and hesitant. Plaintiff uses a cane but is capable of walking without the cane for short distances. Dr. Karathanos opined that Plaintiff could occasionally lift/carry up to 10 pounds; sit 6 hours in an 8-hour workday; stand/walk 30-45 minutes in an 8-hour workday; needs a cane to ambulate; rarely reach overhead and all other bilaterally; occasionally finger and feel bilaterally; never climb, balance stoop, kneel, crouch or crawl; avoid unprotected heights, moving mechanical parts, humidity, extreme cold/heat; and vibrations. The ALJ gave Dr. Karathanos' opinion little weight as his exam findings did not support the restrictions. [R. 22, 467-68].

In May 2017, consultative examiner Subramaniam Krishnamurthi, M.D., noted Plaintiff's motor, sensory, and reflexes were within normal limits. No muscle wasting or

joint deformities were observed. Plaintiff used a cane, walked with a slight limp due to pain in right hip, speed was slow and gait was stable. Heel/toe walking was difficult. Lower extremities had 5/5 strength in quadriceps, hamstrings, dorsiflexion, and plantarflexion bilaterally. Range of motion of both lower extremities were within normal limits. Plaintiff reported that he could walk a block, stand/sit 50 minutes, and lift 40 pounds. [R. 487-489].

X-rays of Plaintiff's left foot taken on July 5, 2017 confirmed "calcification adjacent to the lateral base of the 5th metatarsal, correlate clinically for significant, possible osteoarthritis; otherwise negative." [R. 23, 500].

The ALJ did not weigh or discuss the limitations found by Dr. Krishnamurthi. [R. 23]. Further, the ALJ did not discuss Dr. Hatfield's evaluation, emergency room records, or the opinions of the state reviewing physicians. An ALJ is required to consider all evidence in the case record, and while the ALJ is not required to discuss all such evidence, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Thus, an ALJ "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (internal quotation marks omitted).

Having concluded that remand is necessary to resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO), the ALJ is also encouraged to provide

further discussion of the medical evidence concerning Plaintiff's left foot and the limitations mentioned by Drs. Karathanos and Krishnamurthi.

## Conclusion

The ALJ's decision is therefore REVERSED and the case REMANDED for further proceedings in accordance with this Opinion and Order.

SO ORDERED this 27th day of January, 2020.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE